IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD SCOTT MCILVAINE**<br>　　　　**Plaintiff,**<br>　　v.<br>**1SEO TECHNOLOGIES, INC.,** *et al.*<br>　　　　**Defendants.** | **CIVIL ACTION NO. 19-2675** |

MEMORANDUM OPINION

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**September 10, 2020**

Plaintiff Richard Scott McIlvaine has sued his former employer, 1SEO Technologies Inc., and its president and owner, Lance Bachmann, alleging that he was terminated because of his race and subjected to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964,[1] the Pennsylvania Human Relations Act ("PHRA"),[2] and 42 U.S.C § 1981. Defendants have filed a motion for summary judgment, which will be granted.

**I.　　LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] There are genuine disputes regarding material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] A court "must view the facts in the light most favorable to the non-moving party and must make all

---

[1] 42 U.S.C. § 2000e, *et seq*.

[2] 43 P.S. § 951, *et seq*.

[3] Fed. R. Civ. P. 56.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

reasonable inferences in that party's favor,"[5] and a court may not evaluate the credibility of witnesses or weigh the evidence when determining whether summary judgment is appropriate.[6] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7]

## II. BACKGROUND

The parties do not dispute certain basic facts. It is undisputed that on or about June 25, 2018, Plaintiff was hired as an at-will employee to lead 1SEO's Paid Per Click advertising team by Defendant Bachmann; that both Plaintiff and Bachmann are white; and that four months later, on October 26, 2018, Plaintiff was terminated during a meeting with TJ Butler, a Talent Acquisition Specialist for 1SEO.

Beyond these facts, the parties' accounts diverge. Plaintiff asserts there was no performance-based reason for his termination. He also asserts that after he was escorted out of the office, he spoke with Defendant Bachmann, who falsely accused Plaintiff of being "a white supremacist" and said to Plaintiff: "[y]ou don't like blacks, you don't like women, . . . you don't like gays" and so "you just don't have a place here at this company."[8] Defendants deny that anyone made such statements. Defendants contend that Plaintiff was terminated because 1SEO was dissatisfied

---

[5] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[6] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[7] *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

[8] Pl.'s Opp'n Defs.' Mot. Summ. J., Ex. 1 [Doc. 22-1] at 10. Plaintiff has provided telephone records showing that he and Bachmann spoke after his termination; there is also the following text conversation (capitalization, spelling, and punctuation in original):

> McIlvaine: I can't believe you think I'm a white supremest? You do realize that I have had Kyrus at my home? He was more offended that the people around him accused me of something. I never thought you believed that crap,
>
> Bachmann: I have no clue what your talking about scott I am Lost I heard about your basecamp Message I will take legal action against you if you decode to do any thing else further I wish you good luxk and move on your career.

Pl.'s Opp'n Defs.' Mot. Summ. J., Ex. 2 [Doc. 22-2].

"with his ability to effectively lead or take constructive criticism."[9] For purposes of this motion, the Court views the facts in the light most favorable to Plaintiff and assumes as true that Plaintiff was fired because 1SEO erroneously believed he held the views stated above.

### III. DISCUSSION

#### A. Discrimination in Employment Claim

Under Title VII and the PHRA, a plaintiff may succeed in a discrimination claim against an employer by providing direct or indirect evidence of unlawful discrimination.[10] Direct evidence must be "connected to the decision being challenged by the plaintiff" and will be considered only when it is "so revealing of [discriminatory] animus" that it is "strong enough 'to permit the fact finder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision.'"[11]

Plaintiff cannot establish direct evidence of discrimination. Plaintiff contends that being accused of being a white supremacist inherently constitutes racial discrimination. But "[t]he term 'white supremacist' is not a racial classification. It is used to identify someone as being associated with a racially motivated group."[12] Plaintiff has not produced any evidence that race,

---

[9] Defs.' Reply Supp. Mot. Summ. J. [Doc. No. 23] at 7.

[10] *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 n.4 (3d Cir.1999). Also, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009).

[11] *Anderson v. Wachovia Mortg. Corp.,* 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 512 (3d Cir. 1997)); *Scott v. Genesis Healthcare, Inc.,* No. 15-916, 2016 WL 4430650, at *8 (E.D. Pa. Aug. 22, 2016).

[12] *Davis v. City of Aransas Pass*, No. 13-363, 2014 WL 2112701, at *1 (S.D. Tex. May 20, 2014) (ruling in the context of claims under 42 U.S.C. § 1983), *aff'd*, 605 F. App'x 429 (5th Cir. 2015). Although Plaintiff argues that an accusation of being a white supremacist is necessarily an accusation based on race, this is not so. *See Barker v. Boeing Co.*, 21 F. Supp. 3d 417, 425 (E.D. Pa. 2014) (rejecting a discrimination suit brought by one Native American and two Caucasian employees who were terminated for posing for a workplace photo as members of the Ku Klux Klan, a "white supremacist organization"), *aff'd*, 609 F. App'x 120 (3d Cir. 2015).

as opposed to the views allegedly attributed to Plaintiff, could have motivated the decision.[13] Although it is possible to imagine circumstances in which an employer might attribute views to an employee as a cover for unlawful racial discrimination, Plaintiff has not shown that to be the case here. Plaintiff was terminated by the same decision-makers who had hired him a few months earlier, and those decision-makers—as well as a majority of the company workforce—are of the same race as Plaintiff. [14]

In the absence of direct evidence, the Court applies the burden-shifting framework established in *McDonnell Douglas v. Green*.[15] Under this framework, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating: (1) they belong to a protected class, (2) they were qualified for the position, and (3) they suffered an adverse employment action (4) in circumstances giving rise to an inference of discriminatory motive.[16] The central focus of the *prima facie* case "is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."[17]

If a plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision."[18] If an employer can offer a legitimate, nondiscriminatory reason, then the burden

---

[13] It is worth noting again that Plaintiff denies holding such views, and that Defendants deny attributing such views to Plaintiff or basing his termination upon them.

[14] *Glenn v. Raymour & Flanigan*, 832 F. Supp. 2d 539, 552 n.11 (E.D. Pa. 2011) (evidence that employer hired and fired an employee within an eight-month period may be relevant to demonstrate that discrimination did not factor into the termination). In his deposition, Plaintiff estimated that 75% of the 100 employees at 1SEO during Plaintiff's employment were white. Pl.'s Opp'n. Defs.' Mot. Summ. J. [Doc. No. 22] Ex. 2 at 14–15. Interestingly, Plaintiff does not argue that he was discriminated on the basis of gender or sexual orientation even though he alleges that he was falsely accused of hating "women and gays."

[15] 411 U.S. 792 (2003).

[16] *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005).

[17] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (internal quotation marks and citation omitted).

[18] *Fasold*, 409 F.3d at 184.

shifts again to the plaintiff to offer evidence, direct or circumstantial, that the employer's reason is merely pretext for discrimination.[19] To show that the offered nondiscriminatory reason is merely pretext, "the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact finder could reasonably conclude that each reason was a fabrication; or 2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[20]

Here, Plaintiff has not produced sufficient evidence to establish a *prima facie* case. Although it appears that Plaintiff can establish the first three prongs, he cannot show that the circumstances of his termination give rise to an inference of discrimination. Plaintiff has not produced evidence that other employees at the company were treated more favorably because of their race or that he was replaced by a person of a different race. Furthermore, the fact that the individuals responsible for Plaintiff's hiring and termination are of the same race as Plaintiff suggests that race was not the determining factor.[21] Indeed, when Plaintiff was asked in deposition if he believed he would still have the job if he weren't Caucasian, he was unable to state that he would.[22] Plaintiff has failed to show that his termination gives rise to an inference of discriminatory motive and thus cannot establish a *prima facie* case.

### B. Hostile Work Environment Claim

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of

---

[19] *Id.*

[20] *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994).

[21] *Glenn*, 832 F. Supp. 2d at 552 n.11.

[22] Pl.'s Opp'n Defs.' Mot. For Summ. J., Mar. 1, 2020 [Doc. No. 22] Ex. 1 at 23.

employment, because of such individual's race, color, religion, sex, or national origin."[23] "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."[24] To succeed in a hostile work environment claim, the plaintiff must prove that (1) they were intentionally discriminated against because of their race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability.[25]

In determining whether discrimination is severe or pervasive, a court must consider all of the relevant circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[26] Isolated incidents of discrimination, unless extremely serious, do not alter the conditions of employment and therefore do not constitute a hostile work environment.[27]

Here, Plaintiff asserts only that after his termination, he was falsely accused of being a white supremacist. Plaintiff cannot show that Defendants altered the conditions of his employment to create a hostile work environment when he already had been fired, and therefore summary judgment will be granted as to claim.

---

[23] 42 U.S.C. § 2000e-2(a)(1)

[24] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

[25] *Manel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Although the rights guaranteed by "§ 1981 and Title VII 'are separate, distinct, and independent,'" the same elements apply to claims of hostile work environment under both statutes. *Hamilton v. City of Phila.*, No. 18-5184, 2019 WL 4220899, at *4 (E.D. Pa. Sept. 5, 2019) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)).

[26] *Harris*, 510 U.S. at 23.

[27] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

**IV.     CONCLUSION**

For the reasons stated above, Plaintiff cannot show that he was terminated because of his race or subjected to a hostile work environment, and summary judgment will be entered in favor of Defendants. An order will be entered.